## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| In Re: | ) | In Proceedings Under Chapter 11 |
| | ) | |
| LPB MHC LLC d/b/a SAM C. | ) | |
| MITCHELL & ASSOCIATES, | ) | Case No. 24-40450 |
| | ) | |
| Debtor. | ) | Adversary Case No. |
| _____ | ) | |
| | ) | |
| LPB MHC LLC d/b/a SAM C. | ) | |
| MITCHELL & ASSOCIATES, DEBTOR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| BRANDON ZANOTTI | ) | |
| | ) | |
| and | ) | |
| | ) | |
| BJZ LAW, LCC, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## ADVERSARY COMPLAINT FOR DAMAGES AND OTHER RELIEF

COMES NOW Debtor-in-Possession and Plaintiff LPB MHC, LLC d/b/a Sam C. Mitchell and Associates, by and through the undersigned counsel, and for this Complaint under Federal Rule of Bankruptcy Procedure 7001 (the "Complaint"), and all other applicable rules of procedure and local rules, respectfully states as follows:

## INTRODUCTION

Brandon Zanotti sought and received a golden opportunity to join a well-respected plaintiff-side law firm as its third partner. But hidden from the firm was the fact that Brandon had engaged in serious, illegal conduct and federal authorities were investigating him. This illegal conduct resulted in Brandon pleading guilty to bank fraud and having his law license put at issue. Even after learning that his fate was in jeopardy, Brandon carried on as if nothing was out of the ordinary. His actions were always self-serving and contrary to his obligations, duties, and loyalty to the firm. Brandon's actions have harmed the firm and have consequences the Debtor seeks to address in this Adversary Proceeding.

## JURISDICTION AND VENUE

1.     On November 5, 2024, Debtor LPB MHC, LLC d/b/a Sam C. Mitchell and Associates ("Plaintiff," "Debtor," or the "Firm") filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Illinois (the "Bankruptcy Court" or this "Court").

2.     The filing of this Complaint commences an adversary proceeding within the meaning of FED. R. BANKR. P. 7001.

3.     This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. Venue in this matter is proper under 28 U.S.C. §§ 1408–09.

4.     This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(I).

5.     Plaintiff consents to the entry of final orders or judgments by the Bankruptcy Court.

## PARTIES

6.      Plaintiff is a limited liability company organized under the laws of the State of Illinois.

7.      Defendant Brandon Zanotti ("Brandon") is believed to be an Illinois resident with a present known mailing address in Marion, Illinois 62959.

8.      Defendant BJZ Law, LLC ("BJZ Law") is a limited liability company organized under the laws of the State of Illinois with its principal place of business located in Marion, Illinois 62959.

9.      Brandon Zanotti owns and controls BJZ Law, LLC and serves as its registered agent. Brandon Zanotti and BJZ Law, LLC are referred to hereafter collectively as "Defendants."

## GENERAL ALLEGATIONS

### A.  Brandon Approached Plaintiff to Solicit a Membership Interest in the Firm.

10.      Plaintiff operates a law firm that is focused on plaintiff's-side, personal injury litigation. The Firm is owned by two attorneys, Lance Brown ("Lance") and Matthew Caraway ("Matt").

11.      On or about January 2022, Brandon approached Matt about buying into the Firm as a third member.

12.      Matt had known Brandon for years.  At the time, Brandon was serving as the Williamson County State's Attorney.

13.      Brandon acknowledged that he had little experience litigating personal injury cases, but believed his general litigation experience, management skills, and connections would benefit the Firm.

3

14.     Lance, Matt, and Brandon continued discussions about Brandon joining the Firm during the Spring and Summer of 2022.

15.     During the discussions between Lance, Matt, and Brandon about Brandon joining the Firm, Brandon never mentioned that he was involved in any criminal acts, or being investigated for any criminal acts.

**B. Brandon Joins the Firm as a Member in August 2022, Signs the Firm's Operating Agreement, and Obtains a Loan from Farmers State Bank of Alto Pass to Pay his Buy-in Capital, which Included an Alleged Security Interest from the Firm.**

16.     In August 2022, based on their discussions with Brandon, and without the full knowledge of Brandon's illegal conduct (discussed below), Lance and Matt agreed to let Brandon buy-into the Firm as a member/owner.

17.     On August 1, 2022, the Firm revised its Operating Agreement to include BJZ Law as a new member of the firm. The Operating Agreement is incorporated herein by reference as **Exhibit A**.[1]

18.     Under the Operating Agreement, Brandon made several representations and warranties, including but not limited to, that: "[t]here are no actions, suits, proceedings, or investigations pending or, to the knowledge of such Member, threatened against or affecting such Member or any of its properties, assets, or businesses in any court or before or by any government department, board, agency, or instrumentality, domestic or foreign…" Exh. A, § 6.2(d).

19.     Brandon acknowledged his representations and signed the Operating Agreement.

---

[1] Exhibit A is not a publicly available document, and it contains confidential information. For these reasons, rather than attaching the Exhibit to this Complaint, Plaintiff will provide a copy of Exhibit A to both Defendant and this Court.

20.     As part of his capital contribution to buy into the Firm, Brandon agreed to pay $2,400,000 for a one-third ownership interest in the Firm.

21.     To facilitate the buy-in, Brandon procured a loan from Farmers State Bank of Alto Pass ("Farmers Bank") for his company, BJZ Law.

22.     Brandon paid his capital to the Firm on October 12, 2022, which is the same day the banking documents were signed by Brandon with Farmers Bank.

23.     As part of the loan documentation, BJZ Law signed a $2,400,000 promissory note owed to Farmers Bank (the "Brandon Loan").

24.     The Brandon Loan was guaranteed by Brandon personally.

25.     As part of the Brandon Loan, Brandon purportedly obtained the signatures of the Firm to an alleged Security Agreement purporting to encumber some of the Firm's assets. The Security Agreement is incorporated herein by reference as **Exhibit B**.[2]

26.     Upon information and belief, Brandon served on the board of Farmers Bank both before and after the Brandon Loan was issued.  Among other things, the Firm is unaware of what information Brandon provided, what discussions occurred, and what due diligence was done by or between Brandon and Farmers Bank related to the Brandon Loan.

### C.  Unbeknownst to the Firm, Brandon was Engaged in Illegal Activity at the Time He Joined the Firm.

27.     On March 7, 2024, Brandon asked to meet with Matt.  The two met at Matt's house.

28.     During the meeting, Brandon admitted that in September 2022 he was approached by the FBI.  This is approximately one-month before Brandon signed the documents for the

---

[2] Exhibit B is not a publicly available document, and it contains confidential information. For these reasons, rather than attaching the Exhibit to this Complaint, Plaintiff will provide a copy of Exhibit B to both Defendant and this Court.

Brandon Loan, purportedly obtained signatures of the Firm on the alleged Security Agreement, and paid his buy-in capital.

29.     Brandon admitted that the FBI stated that they had evidence that he had committed bank fraud.  Brandon also explained the FBI had many questions about other potential crimes Brandon may have committed.

30.     Prior to this conversation, Brandon had never disclosed to Lance, Matt, or the Firm his illegal activity or investigation of the same, including any investigation into crimes beyond bank fraud.

31.     Brandon was subsequently indicted and charged with a felony related to bank fraud.

32.     According to the Stipulation of Facts that Brandon agreed to and signed,[3] on or about March 26, 2022, Brandon approached an individual to see if he was interested in buying seven commercial rental properties from a company partially owned by Brandon.  The purchaser acknowledged that his company was interested.

33.     SouthernTrust Bank was approached about financing the purchase.

34.     On or about April 6, 2022, Brandon, a representative of the purchaser, and a representative of the bank met and agreed to several fraudulent actions in furtherance of the purchase including disguising the transaction as a refinancing, falsifying the ownership of the property, and backdating paperwork reflecting the ownership.

35.     During May and June additional acts were taken to further the illegal activity.

36.     On August 12, 2022, the bank funded the sham refinance transaction.

---

[3] A copy of the Stipulation of Facts is attached as **Exhibit C**.

6

37.     Following his indictment for these activities, on March 21, 2024, Brandon pleaded guilty to a charge under 18 U.S.C. §§ 1005 and 2.  The essential elements of the crime included:

a.   "The Defendant aided and abetted one or more individuals in making or causing to be made false entries in the books, reports, or records of the SouthernTrust Bank; and

b.   The Defendant knew the entries were false; and

c.   The Defendant did so with intent to defraud the bank and deceive its officers; and

d.   The SouthernTrust Bank's deposits were insured by the Federal Deposit Insurance Corporation."

38.     Brandon was sentenced to probation for two years based on his guilty plea.

39.     In December 2024, Lea S. Gutierrez, Administrator of the Attorney Registration and Disciplinary Commission, by her attorney, Rachel C. Miller, pursuant to Supreme Court Rule 753(b) and 761(c), filed a Complaint against Brandon alleging that Brandon engaged conduct that subjects him to discipline pursuant to Supreme Court Rule 753(b).

40.     Notwithstanding all of the above, Brandon still directed the Firm to purportedly sign the alleged security interest securing the Brandon Loan, signed the Operating Agreement, and otherwise undertook fiduciary obligations inconsistent with his actions.

41.     Brandon carried on as if business was normal, notwithstanding the knowledge of his own crimes and even after learning that he was under investigation.

42.     Without disclosing the pending investigations, Brandon improperly used his role as a manager to influence his decision making, including personnel decisions, in a way that was entirely self-serving and detrimental to the Firm.

**D. The Firm Removed Brandon from the Firm and BJZ Law as a Member, Brandon Defaulted on the Brandon Loan, and Farmers Bank Seeks to have the Firm Pay the Brandon Loan.**

43.     On April 30, 2024, the Firm held a special meeting and removed Brandon as an employee of the Firm, and BJZ Law was removed as a member effective May 10, 2024.

44.     The Firm had previously expended significant resources to promote Brandon as part of the Firm, including a very expensive engagement in a marketing venture with a national firm, acquisition of a firm for a substantial investment to acquire a new business, and the hiring of an additional attorney and additional staff per Brandon's requests. The Firm also hired a top-tier local marketing firm and increased the marketing budget to emphasize Brandon's new role at the Firm.

45.     During his tenure as partner, Brandon and/or BJZ Law received approximately $1,600,000 in distributions from the Firm.

46.     Notwithstanding these distributions, on information and belief, it appears that Brandon failed to make any payments on the Brandon Loan.

47.     On or about October 29, 2024, Famers Bank filed a lawsuit in Williamson County, Illinois, against the Firm seeking to enforce the alleged Security Agreement entered as a part of the Brandon Loan.

48.     Farmers Bank claims they are owed $2,405,000 on the Brandon Loan, which amount indicates that Brandon never paid down the principal during his tenure with the Firm.

49.     Based on Brandon's failure to pay the Brandon Loan, as part of its collection efforts against the Firm, Farmers Bank sent inaccurate letters to the Firm's opposing counsel on active cases claiming that Farmers Bank had an "assignment" of any settlement proceeds.

50.     Among other things, the publicity surrounding Brandon's actions has caused substantial damage to the Firm.

51.     Brandon's actions have damaged the Firm in an amount to be determined at trial.

52.     Yet, despite all the damage he caused, Brandon somehow continues to claim an interest in the Firm and has improperly demanded continued distributions.

53.     Based on these facts, and the actions of other parties, the Firm had no choice but to file this bankruptcy proceeding to preserve the value of its business and its assets for the benefit of the Firm's estate.

### COUNT I – BREACH OF CONTRACT (OPERATING AGREEMENT)

### (Against Both Defendants)

54.     Plaintiff restates and realleges paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.     Plaintiff and Defendants entered an enforceable contract when they each assented to the Operating Agreement, incorporated by reference as **Exhibit A**.

56.     Per Section 6.2(d) of the Operating Agreement, Defendants warranted that:  "[t]here are no actions, suits, proceedings, or investigations pending or, to the knowledge of such Member, threatened against or affecting such Member or any of its properties, assets, or businesses in any court or before or by any government department, board, agency, or instrumentality, domestic or foreign…"

57.     Defendants did not disclose that Brandon was engaged in illegal activity or under investigation until after the Operating Agreement was entered.

58.     The Operating Agreement is a valid and enforceable contract.

59.     Plaintiff performed all obligations under the Operating Agreement.

60.     Defendants breached the Operating Agreement by failing to disclose – before the Operating Agreement became effective, they paid the capital, or they induced the Firm to sign the alleged security agreement – that (a) Brandon was engaged in illegal activity, and (b) failing to disclose that Brandon was under investigation.

61.     Defendants' breach directly damaged Plaintiff.   Namely, Plaintiff expended substantial amounts in furtherance of Brandon's membership and practicing law with the Firm, including but not limited to: (a) a marketing venture with a national firm; (b) acquiring a firm for additional business; and (c) hired of an additional attorney and additional staff per Brandon's requests to facilitate Brandon's business with the Firm.  Had Defendants properly disclosed Brandon's activity and the pending investigation, Plaintiff would not have suffered any of these damages.

62.      Similarly, Plaintiff would not have purportedly granted the alleged security interest in its assets to Farmers Bank to allegedly secure the Brandon Loan of $2,400,000, nor would it have issued $1,600,000 in distributions during Brandon's tenure as a partner at the Firm.

63.     Defendants' actions also inevitably and predictably resulted in damages to the Plaintiff's reputation when Brandon's investigation led to a guilty plea while he was a partner at the Firm. This has previously and continues to harm Plaintiff's business in an amount to be proven at trial.

WHEREFORE, Plaintiff LPB MHC, LLC, Debtor respectfully requests that this Court enter judgment in its favor and against Defendants Brandon Zanotti and BJZ Law and award it damages in an amount to be determined at trial, and for such other relief as the Court deems proper and just.

## COUNT II – FRAUDULENT INDUCEMENT

### (Against Both Defendants)

64.     Plaintiff restates and realleges paragraphs 1 through 63 of this Complaint as if fully set forth herein.

65.     Defendants made an affirmative representation that Brandon was not under any form of investigation pursuant to Section 6.2(d) of the Operating Agreement. *See* **Ex. A.**

66.     This statement was false, as Brandon had previously committed illegal acts and was, at the time of the representation, under investigation by Federal authorities.

67.     Defendants knew this representation was false, as they were aware of Brandon's illegal conduct and the ongoing investigation into Brandon and his illegal activity.

68.     Defendants made this representation to induce Plaintiff to enter an amended Operating Agreement and to induce Plaintiff to purportedly sign the alleged Security Agreement.

69.     In the addition, Defendants actively hid Brandon's on-going illegal activity for the purpose of inducing the Defendants to take the actions stated herein, to continue to compensate and allow him to manage the Firm, which was done in an improper and self-serving manner.

70.     Defendants had a duty to disclose Brandon's actions to Plaintiff.

71.     But for Defendants' misrepresentations, Plaintiff would not enter the Operating Agreement with BJZ Law or allow Brandon to practice law at the Firm.  In addition, but for Defendants' misrepresentations, Plaintiff would not have paid Brandon $1,600,000.

72.     It was reasonable for Plaintiff to rely on Defendants' representations. Brandon's illegal conduct and subsequent investigation would have been information only available to Defendants at the time.

11

73.     Plaintiff suffered damages resulting from its reliance. Among other damages, Plaintiff expended substantial sums: (a) engaging in a marketing venture with a national firm; (b) acquiring a firm; and (c) hiring an additional attorney and additional staff per Brandon's requests in order to facilitate Brandon's business with the Firm. Had Defendants properly disclosed Brandon's actions and pending investigation, Plaintiff would not have granted him a membership, and it would have not incurred these expenses nor suffered damages.

74.     Similarly, Plaintiff would not have allegedly granted the alleged security interest in its assets to Farmers Bank to secure the Brandon Loan of $2,400,000, nor would it have issued $1,600,000 in distributions during Brandon's tenure as a partner at the Firm.

75.     Defendants' actions also inevitably and predictably resulted in damages to the Plaintiff in a manner and amount to be proven at trial.

WHEREFORE, Plaintiff LPB MHC, LLC, Debtor respectfully requests that this Court enter judgment in its favor and against Defendants Brandon Zanotti and BJZ Law and award it damages in an amount to be determined at trial, and for such other relief as the Court deems proper and just.

## COUNT III – BREACH OF FIDUCIARY DUTY

### (Against Both Defendants)

76.     Plaintiff restates and realleges paragraphs 1 through 75 of this Complaint as if fully set forth herein.

77.     Section 9.1 of the operating agreement states that BJZ Law, LLC and Brandon J. Zanotti (as the owner and controller of BJZ Law, LLC) are Managers of LPB MHC, LLC. **Ex. A.**

78.     Per Article 9 of the Operating Agreement, there exists a fiduciary duty between LPB MHC, LLC and its Managers.

12

79.     Brandon's illegal conduct and investigation by the Federal authorities for several issues during the time that Brandon was a Manager, affected his ability to act as a Manager of LPB MHC, LLC.

80.     Among other things, and for the reasons alleged herein, including by failing to disclose that he had previously engaged in activity that could lead to investigation, his indictment and plea conviction, and possible discipline related to his ability to practice law, Brandon breached his fiduciary duty.

81.     Brandon's concealment of his prior criminal and/or other acts and the pending investigation was not done in good faith.

82.     In choosing to conceal his prior criminal activity and the pending investigation, Brandon chose to put his own interest over LPB MHC, LLC's to its detriment.

83.     Brandon's also chose to put his own interest over LPB MHC, LLC's by concealing this information during key personnel decisions that further caused LPB MHC, LLC to suffer damage.

84.     Brandon's actions constitute actual fraud, gross negligence, or willful misconduct.

85.     Plaintiff suffered damages resulting from Defendants' breach of the fiduciary duty. Namely, Plaintiff expended substantial sums on a marketing venture with a national firm, acquisition of a firm to acquire additional clients, and hiring an additional attorney and additional staff per Brandon's requests in order to facilitate Brandon's business with the firm. Had Defendants properly disclosed Brandon's illegal conduct and/or pending investigation, Plaintiff would not have invested these expenses into Brandon's practice when there was such a high likelihood of his not being able to practice law or retain his status as a Member and Manager of the Firm.

13

86.     Similarly, Plaintiff would not have purportedly granted the alleged Security Agreement in its assets to Farmers Bank to allegedly secure the Brandon Loan of $2,400,000, nor would it have issued $1,600,000 in distributions during Brandon's tenure as a partner at the Firm.

87.     Defendants' actions also inevitably and predictably resulted in damages to the Plaintiff in an amount to be proven at trial.

WHEREFORE, Plaintiff LPB MHC, LLC, Debtor respectfully requests that this Court enter judgment in its favor and against Defendants Brandon Zanotti and BJC and award it damages in an amount to be determined at trial, and for such other relief as the Court deems proper and just.

## COUNT IV – SUBROGATION

### (Against Both Defendants)

88.     Plaintiff restates and realleges paragraphs 1 through 87 of this Complaint as if more fully set forth herein.

89.     Defendants are the debtor on the Brandon Loan.

90.     Upon information and belief, Defendants never made payments on the Brandon Loan.

91.     Farmers Bank has sought payment on the Brandon Loan from Plaintiff under the alleged Security Agreement.

92.     Plaintiff disputes that its assets are properly subject to collection by Farmers Bank.

93.     In the alternative, if it is determined or ordered that Plaintiff satisfy all or a portion of the outstanding debt on the Brandon Loan, then Plaintiff is entitled to seek damages against Defendants as if it were the creditor and to subrogate any claim of the Defendants in the Debtor's bankruptcy case.

94.     To the extent Defendants allege any claim against the Debtor's estate, said claim should be disallowed and/or subrogated below any other claim or interest in this Bankruptcy based

14

on Defendants' actions as stated in this Complaint or otherwise, including but not limited to any further actions discovered in connection with discovery in this case.

WHEREFORE, Plaintiff LPB MHC, LLC, Debtor respectfully requests that this Court subrogate any claims asserted by Defendants in this Bankruptcy below any and all other claims or interests, award damages as appropriate, and for such other relief as the Court deems proper and just.

## COUNT V – UNJUST ENRICHMENT

### (Against Both Defendants)

95.    Plaintiff restates and realleges paragraphs 1 through 94 of this Complaint as if more fully set forth herein.

96.    Defendants fraudulently misrepresented that Brandon had not engaged in illegal activity resulting in an investigation.

97.    Defendants would not have been granted any interest in the Firm but for this fraudulent misrepresentation.

98.    Because Plaintiff reasonably relied on Defendants' misrepresentation, it granted Defendants an interest in the law firm, management of the Firm, and proceeded to issue distributions to Defendants totaling approximately $1,600,000.

99.    Defendants have retained the benefit of these distributions to Plaintiff's detriment, as those distribution funds were paid directly by Plaintiff.

100.    The Defendants retention of those distribution funds, as well as other benefits conferred on Defendants, results in an unjust enrichment of the Defendants and violates the fundamental principles of justice, equity, and good conscious, as they were procured through fraudulent means.

WHEREFORE, Plaintiff LPB MHC, LLC, Debtor respectfully requests that this Court enter judgment in its favor and against Defendants Brandon Zanotti and BJC and award it damages in an amount to be determined at trial, and for such other relief as the Court deems proper and just.

## COUNT VI – DECLARATORY JUDGMENT

### (Against Both Defendants)

101.    Plaintiff restates and realleges paragraphs 1 through 100 of this Complaint as if more fully set forth herein.

102.    Defendants breached the Operating Agreement, committed material misrepresentations, and breached fiduciary duties as more fully set forth above and engaged in additional improper actions stated herein or otherwise.

103.    The Firm properly and effectively terminated Defendants membership interest, employment, or any other affiliation with the Firm.

104.    The Defendants conduct further justifies termination of Defendants membership interest, employment, or any other affiliation with the Firm to the extent it is determined that it was not heretofore terminated.

WHEREFORE, Plaintiff LPB MHC, LLC respectfully requests that this Court enter a declaration that Defendants Brandon Zanotti and BJC membership interests, employment, or any other affiliation with the Firm is, and has been, terminated and that Defendants are not entitled to participate in any benefits of membership, employment, or any other affiliation with the Firm (past, present, or future), and award it damages in an amount to be determined at trial, and for such other relief as the Court deems proper and just.

16

DATED: January 24, 2025          Respectfully submitted,


CARMODY MACDONALD P.C.

By: */s/ Robert E. Eggmann*
ROBERT E. EGGMANN, #37374MO
THOMAS RISKE, #61838MO
CHRISTOPHER J. LAWHORN, #62537518IL
120 S. Central Avenue, Suite 1800
St. Louis, Missouri  63105
(314) 854-8600 (Telephone)
(314) 854-8660 (Fax)
ree@carmodymacdonald.com
rht@carmodymacdonald.com
cjl@carmodymacdonald.com

*Attorneys for Debtor and Debtor-in Possession LPB*
*MHC, LLC d/b/a Sam C. Mitchell and Associates*